STATE of South Dakota, Appellee,

v.

**Dewey BRAVE HEART, Alex Wakeman, Walter Ten Fingers, Caesar Cross Dog, Cordell Sun Bear, Dolores Frazier, Wallace Cook, Ben A. Clah, Appellants.**

Nos. 13654–13661.

Supreme Court of South Dakota.

Argued Sept. 8, 1982.

Decided Nov. 10, 1982.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Andrew B. Reid, Piedmont, for appellants.

FOSHEIM, Chief Justice.

Appellants were charged with, and convicted of, burning an open fire in the Black Hills Forest Fire Protection District without a permit, in violation of SDCL 34–35–16. They appeal their convictions. We affirm.

SDCL 34–35–16 reads:

The starting of an open fire within the Black Hills forest fire protection district or the permitting of a fire to burn in his presence by a person or a group of persons is hereby prohibited unless a permit to do so is first obtained from the state forester or his designee or from the United States forest service supervisor or his designee. An open fire as used in this section and § 34–35–17 shall mean any fire to burn slash, brush, grass, stubble, debris, rubbish, or other inflammable material not enclosed in a stove, sparkproof incinerator, or an established fireplace approved or constructed by public agencies in designated recreation areas.

On November 12, 1981, appellants, through one Ivan F. Starr,[1] requested a permit to burn an open fire in the Black Hills Forest Fire Protection District. The request read:

Dear Mr. Sutton, I am applying for a fire permit for religious purposes. The permit will be used by members of the Tokala Society, a segment of the Lakota Nation, in the practice of the Lakota Religion. The members of the Tokala Society do not wish to disturb any law enforcement or private citizens in the practice of the native Religion, nor do they wish to be disturbed.

SDCL 34–35–17 provides guidelines for issuance of open fire permits. That statute reads:

Any United States forest service supervisor, or his designee, the state forester or his designee shall have authority to issue a permit upon an application to any person to start an open fire within the Black Hills forest fire protection district if in his opinion such fire will not endanger the life or property of another, or deny such permit if in his opinion the climatic conditions or location of the material to be burned is such that the burning would endanger the life or property of others and he may issue a permit subject to such conditions and restrictions as he may consider necessary to prevent the spread of the fire permitted; and he may revoke a permit issued by him upon the change of climatic or other conditions which he considers would make the burning unsafe.

Mr. Sutton, a United States Department of Agriculture Forest Service Ranger, denied the permit request on the authority of SDCL 34–35–17. Mr. Sutton testified that he is a designee of the United States Forest Service Supervisor in which capacity he is authorized to issue burning permits for open fires in the Black Hills Forest Fire Protection District. The permit denial read:

Dear Ivan: I am denying your requested fire permit for the following reasons:

1. Your request does not specify a specific location nor does it name a person to be at the fire location at the time of burning.

2. The request does not state the date and time the burning will take place.

3. The current weather conditions are such that we are not issuing permits to anyone until a change in weather conditions take place.

Appellants did not attempt to rectify the deficiencies in their request for a permit (points 1 and 2 of the denial) nor did they apply for a permit thereafter on the basis of more favorable weather conditions. Appellants were arrested on November 15, 1981, by the Sheriff of Custer County, South Dakota, when he observed three open fires in the camp.

1. Mr. Starr was not a witness at trial and, except as the person who requested the fire permit on November 12, 1981, was not identified. It does not appear that he was a camp member. The State, however, does not dispute appellants' assertion that Mr. Starr's permit request was made on their behalf.

Appellants do not deny the lack of a permit or claim that the fires were enclosed in a stove, sparkproof incinerator, or established fireplace. (See SDCL 34–35–16, *supra*.) Instead they argue that South Dakota's open fire law is pre-empted by the Ft. Laramie Treaty of 1868 and federal permit regulations, and that enforcement of the open fire law against them operates to deny them their First Amendment right to freely exercise their religion.

■ *United States v. Sioux Nation of Indians*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), held that the Black Hills, part of the lands set aside for the permanent use and occupation of the Sioux in the Ft. Laramie Treaty of 1868 (15 Stat. 635), was taken from the Sioux by Act of Congress in 1877 (19 Stat. 254) pursuant to the federal government's power of eminent domain and that the federal government must pay the Sioux approximately $17.1 million, plus interest, as just compensation for the taking. Appellants concede the validity of that decision is not an issue. They do contend, however, that the $17 million, plus interest, only compensates them for their lost property rights and does not foreclose their implicit residual rights to engage in religious and cultural activities on their 1868 treaty lands. It is the position of appellants that to the Lakota people, whose traditions were taught at their camp, the secular and religious cannot be separated. Consequently they argue that the 1868 Treaty is still viable, giving them the right to use and occupy the Black Hills for secular and religious activities. Such an assertion can only be understood as a claim arising under a treaty with the United States of which the United States Court of Claims has exclusive subject matter jurisdiction. *Oglala Sioux Tribe, Etc. v. United States*, 650 F.2d 140 (8th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982), citing the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C. § 70, *et seq.* (1976). In *Oglala Sioux Tribe*, the

Eighth Circuit Court of Appeals held that federal district courts do not have power to decide such issues. If the federal district courts do not have authority to decide Indian treaty claims, much less can state courts presume to have any such jurisdiction. Consequently, we advance to appellants' second issue.

■ Appellants argue that South Dakota's fire permit laws are preempted by federal fire permit laws and thus their convictions under South Dakota law are invalid. Mr. Sutton denied the requested permit under SDCL 34–35–17 without referring to federal fire permit regulations contained in 36 C.F.R. § 261.1a. This was proper in light of the federal regulation requiring that all forest service officers "cooperate with State officials, insofar as practicable, to enforce State fire, game, and health laws." 36 C.F.R. § 211.3. Such cooperation is further mandated by the Cooperative Fire Control Agreement[2] between the United States Forest Service and the South Dakota Department of Game, Fish and Parks. This agreement recognizes that the Forest Service and the State are independently responsible for certain lands in the Black Hills Forest Fire Protection District which are intermingled or adjacent. Article 4 of this agreement states "[i]t shall be the duty of each protecting agency to issue permits required by SDCL 34–35–17[.]" We conclude this agreement resolves the preemption issue against appellants.

■ We last reach appellants' First Amendment claim, that enforcement of the open fire law against them prevented the free exercise of their religion. Appellants contend they proved that fires are an essential ingredient of the Lakota religious rituals, specifically the pipe and sweat lodge ceremonies, and traditional feasts performed and celebrated in their camp. Appellants maintain that by depriving them of the use of fire, the state "stole the heart of the religious ceremonies, 'the center of the [Lakota] universe', 'the bread and wine' of

---

**2.** A copy of this agreement was attached to the State's showing in opposition to appellants'   motion to dismiss.

their communion with the Creator." In this regard the trial court noted: "There's no doubt in my mind that this particular camp, this location, was a nonviolent, peaceful camp, [of] spiritual significance to the participants." While it may be granted that a purpose of the camp was to attain spiritual growth and fulfillment, this is not the same as saying that the practice of appellants' religion requires the burning of open fires. Appellants have not overcome the initial hurdle of a free exercise claim, that is, demonstrating that enforcement of the statute in fact denied the free exercise of their religion. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). "[T]o have the protection of the Religion Clauses, the claims must be rooted in religious belief." *Id.* at 215, 92 S.Ct. at 1533. Here there was no evidence presented, and appellants did not argue, that their pipe and sweat lodge ceremonies and their ceremonial feasts required "open" fires. There was no evidence that these ceremonies and feasts could not have been performed using a stove, sparkproof incinerator or established fireplace as allowed in SDCL 34–35–16. The record does not show that such alternatives to an open fire, pending a change in weather conditions, would have interfered with the free exercise of appellants' religion.

Knowing that weather conditions may change from day to day and that Mr. Starr's application had been denied on November 12 because of unfavorable weather conditions, the record does not reveal why appellants did not reapply for a permit with the needed information on November 15. The permit denial was explicit that no fire permits were being issued on November 12 due to weather conditions. It was also implicit that such refusal may be lifted when weather conditions permitted. The record indicates that if appellants had complied with the fire law, they could have performed their religious ceremonies without interference. We conclude that their First Amendment claim is not valid.

We affirm.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

The record is devoid of any proof that any of the defendants were members of any Indian tribe. Therefore, these defendants cannot claim any benefits as a member of any Indian tribe.

Defendants did not have a permit for an open fire on November 15, 1981. The encampment existed for approximately three or four weeks before November 15, 1981, when law enforcement officers arrived to find that the encampment was breaking up and most of the tents had been taken down the night before. Most significantly, the open fire was being used to cook breakfast and was not being used for a religious ceremony. On or about November 8, 1981, the sheriff of Custer County was called to this encampment for the purpose of an emergency, namely to remove and help a woman and a new-born baby. On November 10, 1981, the same sheriff returned to this encampment and arrested three individuals for open fire violations. The sheriff was handed a written statement by a member of the encampment which was titled "The Camp Significance or the Camp's Purpose." This statement indicated that the purpose of the camp was for hunting and fishing in the Black Hills and the hunt was being conducted because of cuts in welfare, not one word being mentioned concerning religious practices or purposes. One of the campers testified that the camp was set up in a spiritual way but that he and his family's main purpose in going to the Black Hills was political in nature, namely that the Black Hills still belonged to the Sioux Nation and that his wife and two daughters had moved with him to demonstrate that they were against the so-called "selling" of the Black Hills. Further, this camper stated he wanted to draw attention to the Indian people's opposition to settlement of money in exchange for the Black Hills to the federal government. He testified that

life was poor on the reservation and that he just wanted to go to the Black Hills to camp.

The State of South Dakota had a compelling interest, namely the prevention of fire and the burning down of the Black Hills. The area was dry where the open fires were burning and there was grass and pitch in the immediate area. Trees totally surrounded the encampment next to the open fires. Strewn about was clothing and old mattresses, all of which created a highly combustible and dangerous situation.

The entire purpose of the Black Hills forest fire protection district is to protect the timber and areas subject to unusual fire danger. *See* SDCL 34–35–15. It is not unreasonable nor burdensome for any citizen of this State to procure a permit to have an open fire in the Black Hills. For the sake of public interest and safety, the State must protect the Black Hills National Forest lest indiscriminate burning reduce it to total ruin.

There has been absolutely no encroachment upon the religious freedom of these defendants by their prosecution and conviction. The statute under which these defendants were convicted does not make criminal the holding of any religious belief or opinion and it certainly does not coerce anyone into embracing any religious belief or to do or to say or to believe anything in conflict with their religious tenents. Therefore, and in keeping with the basic ruling in *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1145, 6 L.Ed.2d 563 (1961), the open fire statute pertaining to the Black Hills of South Dakota is not a violation of the First Amendment rights of the defendants.